UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| FIRST 100, LLC, *et al.*, <br><br> Plaintiff, <br><br> v. <br><br> OMNI FINANCIAL, LLC, *et al.*, <br><br> Defendants. | Case No. 2:16-cv-00099-RFB-CWH <br><br> **ORDER** |

### I.   INTRODUCTION

On June 27, 2016, the Court held a hearing in this case at which it heard representations from the parties regarding Plaintiff First 100, LLC's alleged conduct following a UCC foreclosure sale at which Defendant Omni Financial, LLC purportedly purchased certain categories of personal property belonging to First 100. This alleged conduct was set forth in Omni's Application for Writ of Possession and the accompanying affidavits of Omni's principal and its counsel, filed *ex parte* on June 18, 2016. ECF No. 106. At the hearing and in its Application for Writ of Possession, Omni has sought injunctive relief in the form of an order from this Court directing First 100 to preserve assets to which Omni contends it is entitled. For the reasons stated below, the Court issues a temporary restraining order against First 100 preventing it from selling or dissipating the subject assets.

### II.   LEGAL STANDARD

The analysis for a temporary restraining order (TRO) is "substantially identical" to that of a preliminary injunction. Stuhlbarg Intern. Sales Co, Inc. v. John D. Brush & Co., Inc., 240 F.3d

832, 839 n.7 (9th Cir. 2001). A party seeking a preliminary injunction must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc., 758 F.3d 1069, 1071 (9th Cir. 2014), as amended (Mar. 11, 2014) (citing Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008)).

In addition, a court may issue a temporary restraining order without notice to the opposing party only if (1) "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and (2) the moving party's attorney provides a written certification of its efforts to provide notice and why notice should not be required. Fed. R. Civ. P. 65(b)(1). TROs issued without notice "are no doubt necessary in certain circumstances, but under federal law they should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." Granny Goose Foods, Inc. v. Bhd. of Teamsters, 415 U.S. 423, 439 (1974) (citation omitted).

### III. DISCUSSION

At the June 27, 2016 hearing, the Court ordered that Omni's Application for Writ of Possession be unsealed and gave First 100 a deadline to file a response to it. Nevertheless, for the reasons discussed below, the Court finds that Omni has established the four factors required for a temporary restraining order enjoining the sale or transfer of any assets to which Omni claims entitlement prior to a hearing on that application. Omni has also clearly shown that it is likely to suffer irreparable injury before First 100 can be heard in opposition. The Court therefore issues this TRO against First 100 pending a hearing on the merits of Omni's declaratory relief claim.

#### A. Likelihood of Success on the Merits

Omni has shown that it is likely to succeed on the merits of its declaratory relief claim against First 100. Nevada law clearly permits a secured party to foreclose to enforce its security interest upon default. N.R.S. 104.9601(1)(a). A secured party may purchase collateral at a public

sale, N.R.S. 104.9610(3)(a), and its disposition of collateral after default transfers "all of the debtor's rights in the collateral," N.R.S. 104.9617(1)(a).

In its Answer and Counterclaim, Omni alleges that it was the prevailing bidder in eight UCC foreclosure sales held on May 25, 2016 and therefore is the owner of First 100's personal property that was sold at the sale. Omni has provided UCC-1 financing statements identifying itself as the debtor and identifying the collateral of First 100 that was the subject of the sale; UCC foreclosure sale notices issued before the sale; the bills of sale for each of the eight sales identifying Omni as the buyer; affidavits of publication demonstrating that the sale was noticed in several daily newspapers; and affidavits detailing what was said and done at the sale itself. See App. for Writ of Poss. Ex. 1-5, 8, ECF No. 106. These documents establish that Omni is likely to prevail on its declaratory relief claim that it acquired the personal property described in the sale notices at the foreclosure sale. And most crucially, First 100 has not contested Omni's right or ability to foreclose under the Security Agreement between the parties despite being given multiple chances at previous preliminary injunction hearings to do so. Instead, First 100 focused on the value of its HOA receivables and argued that the value of these receivables far exceeded the debt owed to Omni. The first factor is therefore satisfied.

**B. Likelihood of Irreparable Harm**

Omni has also demonstrated that it is likely to suffer irreparable harm absent a TRO. According to Omni's affidavits, First 100 is attempting to solicit settlements in pending lawsuits in which it is a party. Omni asserts that it is now the owner of these choses in action, which are currently in state court or in federal court before different judges than the undersigned. Omni has shown that there is a significant likelihood that First 100 will settle or otherwise resolve causes of action or entire cases that likely belong to Omni and it will be unable to unwind these actions. Moreover, this harm is difficult to quantify (and is therefore irreparable) because it is impossible to know what these legal claims would be worth to Omni, rendering money damages inadequate. See Excellence Cmty. Mgmt. v. Gilmore, 351 P.3d 720, 723-24 (Nev. 2015) ("Irreparable harm is an injury for which compensatory damage is an inadequate remedy."); Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc., 944 F.2d 597, 603 (9th Cir. 1991) (recognizing that,

while economic injury does not itself constitute irreparable harm because it can be remedied by an award of damages, certain types of intangible injuries can constitute irreparable harm). The Court thus finds that Omni has satisfied this prong.

### C.  Balance of Equities

The balance of equities tips in Omni's favor. Despite being asked multiple times to do so, First 100 was unable to identify what prejudice it would suffer if this TRO were granted. First 100 argued that this TRO would amount to putting them out of business. The Court does not agree, particularly given that the TRO permits First 100 to engage in its ordinary course of business and is for a limited duration. The Court also finds that First 100's history of inequitable conduct in this case, as demonstrated by its failure to disclose a key transaction between itself and GFY Management, LLC to the Court during the pendency of this litigation and at the previous preliminary injunction hearing, weighs against a finding in its favor here.

The harm to Omni if this TRO is not issued, by contrast, would be significant. Absent a TRO, Omni would continue to face the probability that assets to which it is likely entitled will continue to dissipate and that First 100 will attempt to negotiate settlements of causes of action that are likely now owned by Omni.

### D.  Public Interest

"When the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be at most a neutral factor in the analysis rather than one that favor[s] in [granting or] denying the preliminary injunction." Stormans, Inc. v. Selecky, 586 F.3d 1109, 1138-39 (9th Cir. 2009) (internal quotation marks omitted). There is a public interest in the enforcement of contracts and judgments and in predictability in commercial transactions. Under the circumstances of this case and given the limits of the TRO, the Court does not find that the public interest is a strong factor here. Nevertheless, to the extent it is an issue, the Court finds that it favors Omni.

### E.  Issuing TRO Without Notice

Finally, the Court finds that Omni has met its burden for obtaining the issuance of a TRO without notice to First 100. For the reasons discussed in Section III.B above, the Court finds that

- 4 -

1  through its counsel's affidavit, Omni has clearly shown that it will suffer irreparable injury before
2  First 100 can be heard in opposition, as required by Fed. R. Civ. P. 65(b).

### F. Bond

A court may only issue a TRO "if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). District courts have discretion in setting the amount of bond. Save Our Sonoran, Inc. v. Flowers, 408 F.3d 1113, 1126 (9th Cir. 2004). A strong likelihood of success on the merits can "tip[] in favor of a minimal bond or no bond at all." People of State of Cal. v. Tahoe Reg'l Planning Agency, 766 F.2d 1319, 1326 (9th Cir. 1985).

Here, based upon the evidence presented and Omni's particularly strong likelihood of success on the merits of its claims, the Court finds that a bond of $1,000 is appropriate in this case.

### IV. ORDER

For the reasons discussed above,

**IT IS ORDERED** that Plaintiff First 100, LLC, as well as its officers, agents, employees, and attorneys, and all other persons in active participation with any of them who receive actual notice of this Order, are TEMPORARILY RESTRAINED from selling, encumbering, dissipating, or otherwise transferring any assets identified in any of the eight categories of personal property listed in Omni's "Notification of Disposition of Collateral of Personal Property of First 100, LLC" attached as Exhibit 3 to Omni's Application for Writ of Possession (ECF No. 106). As part of this Order, First 100 is prohibited from settling or voluntarily dismissing any choses in action or lawsuits in which it is a party. This Order does not prohibit First 100 from transferring funds in the ordinary course of its business, but First 100 shall maintain records of any transactions in which it participates during the pendency of this Order and shall produce those records when directed to do so by the Court.

**IT IS FURTHER ORDERED** that Defendant/Counterclaimant Omni Financial, LLC shall be required to post security of $1,000. This Order shall take effect as soon as Plaintiff First 100, LLC receives actual notice of the posting of this security, and shall expire at the close of

business on Monday, July 11, 2016, unless extended pursuant to Fed. R. Civ. P. 65(b)(2) or dissolved prior to that date by the Court.

DATED: June 27, 2016.

_____
**RICHARD F. BOULWARE, II**
**United States District Judge**