UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| FIRST 100, LLC, *et al.*,<br>　　　　　　Plaintiff,<br>　　v.<br>OMNI FINANCIAL, LLC, *et al.*,<br>　　　　　　Defendants. | Case No. 2:16-cv-00099-RFB-CWH<br><br>**<u>ORDER</u>** |

### I.　BACKGROUND

This case is before the Court on an Emergency Motion to Stay Proceedings filed by Plaintiffs First 100, LLC and 1st One Hundred Holdings LLC (collectively, "First 100") on June 8, 2016. ECF No. 86. In its motion, First 100 seeks a stay of all proceedings in this action pending a resolution of its petition for writ of mandamus filed with the U.S. Court of Appeals for the Ninth Circuit. Because the Court finds that First 100 has not demonstrated that it is likely to succeed on the merits of its petition, First 100's motion is denied.

### II.　BACKGROUND

First 100 initially brought this action in Nevada state court seeking to enjoin a foreclosure sale of First 100's assets by Defendants Omni Financial, LLC and PrenPoinciana, LLC. The case was removed to this Court on January 18, 2016, and First 100 filed an Emergency Motion for Temporary Restraining Order one day later.[1] ECF Nos. 1, 2. On January 20, 2016, the Court held a hearing and issued a Temporary Restraining Order (1) enjoining Defendants from conducting a

---

[1] Interested party Kal-Mor-USA, LLC ("Kal-Mor") joined in First 100's Motion for Temporary Restraining Order on January 20, 2016. ECF No. 8.

foreclosure sale on any property belonging to First 100 and (2) preventing First 100 from selling, encumbering, or otherwise disposing of any of their interests in HOA accounts receivable at issue in this litigation. ECF Nos. 11, 12. First 100 subsequently filed its Motion for Preliminary Injunction, the hearing of which was postponed several times to allow the parties to pursue settlement and to retain expert witnesses to testify as to the valuation of the HOA accounts receivable at issue in this case. ECF Nos. 36, 41, 58. The Court held a hearing on Plaintiffs' preliminary injunction motions over three days from May 11, 2016 to May 13, 2016.

On May 23, 2016, the Court denied First 100's and Kal-Mor's Motions for Preliminary Injunction, finding that neither party had established a likelihood of success on the merits of their claims or a likelihood of irreparable harm absent an injunction. ECF No. 82. In its Order, the Court also denied First 100's Motion to Enforce Settlement Agreement. Id. at 19-21. The Court found that the parties had not entered into an enforceable contract according to the terms read into the record on February 2, 2016 because they had not agreed to all material terms. Id. at 19-20. Moreover, the Court found that even if the agreement were enforceable, First 100 would no longer be entitled to seek enforcement of it because of its material breach of that agreement. Id. at 20-21.

On June 7, 2016, First 100 filed a Petition for Writ of Mandamus with the U.S. Court of Appeals for the Ninth Circuit. ECF No. 92. In its petition, First 100 seeks an order from the Ninth Circuit directing this Court to find that the terms of the purported settlement agreement read into the record on February 2 are binding upon the parties and to grant the Motion to Enforce Settlement Agreement.

On June 8, 2016, First 100 filed a motion on an emergency basis seeking to stay all proceedings in this case pending resolution of its mandamus petition. ECF No. 86. In this motion, First 100 argues that unless a stay is granted, the purpose of the writ of mandamus—enforcement of the settlement agreement—would be defeated since the settlement agreement was intended to prevent further litigation. First 100 also contends that it would be irreparably harmed absent a stay because Omni, as the winning bidder at the foreclosure sale, has begun making demands on First 100's personal property, contacting the defendants in civil actions brought by First 100, and offering to sell First 100's legal claims. First 100 argues that it would be irreparably harmed if

Omni attempted to assert ownership of First 100's claims in this case and dismiss them with prejudice. Finally, First 100 also argues in cursory fashion that Defendants will suffer no harm from a stay beyond delay in this litigation and that First 100 is likely to succeed on the merits of its writ petition.

In response, Omni (joined by PrenPoinciana) argues that First 100 has not shown it is likely to succeed on the merits of its mandamus petition because (1) it has not demonstrated how this Court's ruling on the motion was erroneous and (2) it has not addressed the Court's alternative finding regarding First 100's breach of the purported settlement agreement. ECF No. 94. In addition, Omni contends that First 100 has not established that it is likely to suffer irreparable harm absent a stay because it has not shown that Omni is attempting to unjustly enrich itself by taking title to First 100's personal property. Omni asserts that First 100's definition of irreparable harm (interference with its ability to do business) was already rejected by this Court in its order denying the preliminary injunction motions. Omni's counsel has also submitted a declaration stating that Omni has not initiated contact with any litigants in First 100's cases, but that it has received inquiries from litigants in those cases. Id. Ex. A. Finally, Omni argues that the equities tip in its favor due to First 100's wrongful conduct in this case and that the public interest in ensuring that secured debt obligations and court orders are honored weighs against a stay in this case.

### III.     LEGAL STANDARD

As an initial matter, the Court agrees with Omni that First 100 has not provided the correct legal standard applicable to motions to stay proceedings pending an appeal. In the Ninth Circuit, the factors that courts consider in deciding whether to grant a stay are the same as those applicable to a motion for preliminary injunction: "A party seeking a stay must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of relief, that the balance of equities tip in his favor, and that a stay is in the public interest." Humane Soc'y of U.S. v. Gutierrez, 558 F.3d 896, 896 (9th Cir. 2009) (mem.); see also Hilton v. Braunskill, 481 U.S. 770, 776 (1987) ("Different [r]ules of [p]rocedure govern the power of district courts and courts of appeals to stay an order pending appeal. See Fed. Rule Civ. Proc. 62(c); Fed. Rule App. Proc.

- 3 -

8(a). Under both [r]ules, however, the factors regulating the issuance of a stay are generally the same: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."). The first two factors—likelihood of success on the merits and likelihood of irreparable harm—are the "most critical." Nken v. Holder, 556 U.S. 418, 434 (2009).

"A stay is not a matter of right, even if irreparable injury might result. It is instead an exercise of judicial discretion, and [t]he propriety of its issue is dependent upon the circumstances of the particular case." Id. at 433 (citations and internal quotation marks omitted) (alteration in original). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." Id. at 433-34.

## IV. DISCUSSION

After reviewing the parties' briefs, the Court denies First 100's motion to stay proceedings because it has not established the critical element of likelihood of success on the merits, satisfaction of which is required for the issuance of a stay.

### A. Likelihood of Success on the Merits

The Court finds that First 100 has not shown that it is likely to succeed on the merits of its mandamus petition. First 100 has not established a likelihood that the Court committed clear error in its Order denying the preliminary injunctions, which is required in order to obtain the relief of a writ of mandamus.

"The writ of mandamus is an 'extraordinary' remedy limited to 'extraordinary' causes." Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court, 408 F.3d 1142, 1146 (9th Cir. 2005). The Ninth Circuit analyzes five factors in determining whether a party is entitled to the writ, "asking whether: 1) there are no other adequate means, such as direct appeal, to secure relief; 2) failure to grant the writ would result in damage to petitioner that is not correctable on appeal; 3) the district court's order is clearly erroneous as a matter of law; 4) the order represents an oft-repeated error or patent disregard of the federal rules; and 5) the order raises new and important problems or legal

1  issues of first impression." Id. Although every factor need not necessarily be met, "the absence of
2  the third factor, clear error, is dispositive." Id. (citations and internal quotation marks omitted).
3  "Clear error is found when a reviewing court has a definite and firm conviction that a mistake has
4  been committed." Lewis v. Ayers, 681 F.3d 992, 998 (9th Cir. 2012) (internal quotation marks
5  omitted).

6      First 100's discussion of its likelihood of success on the merits is extremely brief and does
7  not address which aspects of the Court's order First 100 believes were clearly erroneous or how
8  any of the other factors considered in issuing a writ of mandamus are met in this case. With respect
9  to the issue of likelihood of success, First 100's brief is limited to discussion of the principle that
10 settlement is favored over litigation and the argument that First 100 will be put out of business if
11 the settlement is not enforced. First 100's discussion of the preferred status of settlements,
12 however, does not establish that a valid and binding settlement agreement was reached in *this* case.
13 Further, First 100's argument about being put out of business goes to the issue of irreparable harm,
14 not success on the merits, and was already rejected as a potential basis for relief in the Court's
15 Order. See Order at 18-19, ECF No. 82. First 100 has not presented any new argument on this
16 issue.

17     Even if the Court were to consider the arguments raised in First 100's mandamus petition
18 itself, the Court would not find that First 100 has established that this Court committed clear error.
19 First 100's legal argument in its mandamus petition rests on the theory that this Court clearly erred
20 by relying on later-proposed draft agreements to find that there was no meeting of the minds at the
21 February 2 hearing. But First 100 cites no authority to contradict this Court's reliance on May v.
22 Anderson, 119 P.3d 1254 (Nev. 2005) and Certified Fire Protection, Inc. v. Precision Construction,
23 283 P.3d 250 (Nev. 2012) for the principles that (1) a contract has not been formed until there has
24 been agreement on all material terms and (2) in determining the material terms, courts can look to
25 the context of the agreement and the subsequent conduct of the parties, including the type of
26 dispute that arises.

27     First 100 also argues that the Court's conclusion that no meeting of the minds occurred at
28 the February 2, 2016 hearing contravenes the Nevada Supreme Court's decision in Grisham v.

Grisham, 289 P.3d 230 (Nev. 2012). Grisham involved a final divorce decree entered by a Nevada district court based upon a written, but unsigned, settlement agreement and the parties' testimony that they agreed to be bound by the agreement's terms. After finding that the agreement was not subject to the statute of frauds, the Nevada Supreme Court held that the district court did not abuse its discretion in enforcing the settlement agreement and entering a final divorce decree. The Court stated that settlement agreements are contracts "subject to general principles of contract law," meaning that they require a meeting of the minds on the contract's essential terms. Grisham, 289 P.3d at 234-35 (citing, among other cases, May and Certified Fire Protection). The Nevada Supreme Court did not hold, as First 100 seems to argue, that *every* purported agreement stipulated in open court is a binding contract. While such an agreement can undoubtedly be binding in some cases, it must still be sufficiently definite and must demonstrate mutual assent on all material terms; "[a] valid contract cannot exist when material terms are lacking or are insufficiently certain and definite for a court to ascertain what is required of the respective parties and to compel compliance if necessary." Id. at 235 (internal quotation marks omitted). Therefore, Grisham does not alter the Court's analysis of whether a binding settlement agreement was reached.

Moreover, in its petition, First 100 does not directly address the Court's alternative finding that First 100 would nevertheless be precluded from enforcing the settlement agreement given its material breach of the terms of that agreement. See Order at 20-21, ECF No. 82. At oral argument on the instant motion, First 100 contended that even if it had breached the purported settlement agreement, Omni and PrenPoinciana were required to bring the breach before this Court and, while they could seek damages, were not permitted to proceed with their foreclosure sales. This position is contradicted by the representations made by the parties at the February 2, 2016 hearing. At that hearing, counsel for PrenPoinciana stated: "[M]y understanding is that all parties here are retaining all of their rights. They are not waiving any defaults. They are not waiving any defenses. And so . . . we are not agreeing that we are not entitled to foreclose. That issue would be—would remain alive if this agreement broke down and the parties had to litigate the issue." Tr. at 28:2-7, ECF No. 37. In response, counsel for First 100 stated "[t]hat's correct, Your Honor." Id. at 28:8. This exchange demonstrates that the parties understood that Omni and PrenPoinciana retained their

right to foreclose in the event the purported settlement agreement was breached. First 100's position that the settlement agreement had the effect of a foreclosure sale and removed Defendants' ability to ever foreclose in the future is therefore without merit.[2]

For these reasons, the Court finds that First 100 has not established that it is likely to succeed on the merits of its mandamus petition.[3] The element of likelihood of success on the merits is dispositive, and the Court need not analyze the other stay factors. See Humane Soc'y, 558 F.3d at 897 ("[W]e conclude that appellants have not met their burden of demonstrating a likelihood of success on the merits. They therefore fail to meet the threshold for a stay pending appeal."); Doe v. Reed, 586 F.3d 671, 681 n.14 (9th Cir. 2009) (concluding, in the context of a motion for preliminary injunction, that "[b]ecause . . . Plaintiffs have failed to satisfy the first Winter factor—likelihood of success on the merits—we need not examine the three remaining Winter factors"). Nevertheless, the Court will include a discussion of the remaining factors.

### B.  Likelihood of Irreparable Harm

The Court finds that First 100 has established a possibility of irreparable harm absent a stay. First 100 argues that it will be irreparably harmed by Omni asserting control over its lawsuits and causes of action. The Court agrees that First 100 could be irreparably harmed if Omni were to attempt to assert ownership over (and potentially dismiss) First 100's causes of action, particularly if those claims are equitable in nature. While Omni stipulated during oral argument that it would not attempt to assert control over First 100's claims in the instant case during the pendency of the litigation, the potential for irreparable harm remains from the risk that Omni will assert control

---

[2] Moreover, to the extent First 100 asserts that Omni's and PrenPoinciana's *only* remedy for a breach of the purported settlement agreement was to bring the issue before the Court, this argument also fails. The terms of the purported settlement agreement were not sufficiently specific and definite on the issue of remedies in the event of a breach for the Court to accept this position. In any event, the issue of breach *was* brought before the Court at the preliminary injunction hearing, after which the Court adjudicated the issue and ruled that, in the event the settlement agreement was found to be enforceable, First 100 had breached it.

[3] The Court recognizes that a preliminary injunction (the standard for which consists of the same factors as in the context of a stay pending appeal) may also issue under the "serious questions" test, whereby a plaintiff can obtain injunctive relief injunction by demonstrating "that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor," in addition to the other necessary factors. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134 (9th Cir. 2011). The Court finds that First 100 has not satisfied even the lower "serious questions" threshold with respect to the merits of its mandamus petition.

1    over First 100's causes of action unrelated to this case. Nevertheless, as First 100 has failed to
2    establish the required element of likelihood of success on the merits, this potential for irreparable
3    harm is not sufficient to warrant the issuance of a stay.
4         First 100's remaining arguments in support of this factor are unpersuasive. First 100 argues
5    that Omni has sought to take possession of First 100's office equipment and that this places First
6    100's business in jeopardy. But as the Court found in its Order, this does not constitute a basis for
7    irreparable harm given that there is no indication that Omni's conduct has been tortious or
8    "committed without just cause." See Order at 20-21, ECF No. 82. First 100 also cites to various
9    cases for the general principle that law and public policy favor settlement of disputes. As discussed
10   above, however, First 100 has failed to show how a binding settlement was reached in this case.
11        In sum, while First 100 has shown that there is a potential for irreparable harm from Omni
12   attempting to take over its causes of action, the lack of any showing of a likelihood of success on
13   the merits defeats its motion.

### C.  Balance of the Equities

15        First 100 has also failed to show that the balance of equities tips in its favor. First 100's
16   inequitable conduct in this case weighs against a finding in its favor with respect to this factor. As
17   the Court found in its Order denying First 100's motion for preliminary injunction, First 100 (along
18   with nonparty GFY Management, LLC) intentionally withheld documents and information from
19   Defendants and from the Court regarding a transaction it conducted with GFY to sell certain HOA
20   receivables connected to this case. See Order at 9-10, ECF No. 82. These documents and
21   information were crucial to the Court's consideration of First 100's motion for preliminary
22   injunction and motion to enforce the purported settlement agreement between the parties. This
23   conduct of First 100 tips the balance of the equities in favor of Omni.

### D.  Public Interest

25        "When the reach of an injunction is narrow, limited only to the parties, and has no impact
26   on non-parties, the public interest will be at most a neutral factor in the analysis rather than one
27   that favor[s] in [granting or] denying the preliminary injunction." Stormans, Inc. v. Selecky, 586
28   F.3d 1109, 1138-39 (9th Cir. 2009) (internal quotation marks omitted). There is a public interest

in the enforcement of contracts and judgments and in predictability in commercial transactions. The Court's order denying First 100's motion for a preliminary injunction furthers these interests because it permits Omni and PrenPoinciana—whose authority to foreclose First 100 has not successfully challenged—to proceed with a foreclosure sale according to the procedures required under Nevada law. Under the circumstances of this case, the Court does not find that the public interest is a strong factor. Nevertheless, to the extent it is an issue, the Court finds that it favors the denial of a stay.

### V.     CONCLUSION

For the reasons discussed above,

**IT IS ORDERED** that Plaintiffs First 100, LLC and 1st One Hundred Holdings, LLC's Emergency Motion to Stay Proceedings (ECF No. 86) is DENIED.

DATED: June 28, 2016.

_____
**RICHARD F. BOULWARE, II**
**United States District Judge**